UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) 3:24-CR-87-KAC-JEM-1 |
| LASHAWN MARQUIZE FREEMAN, | ) ) ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**
**GRANTING MOTION TO REVOKE DETENTION ORDER**

Before the Court is the United States's "Emergency Motion Under 18 U.S.C. § 3145 for Revocation," which, as relevant here, asks the undersigned to revoke United States Magistrate Judge Jill E. McCook's July 14, 2025 release order [Doc. 39; *see also* Doc. 36]. Upon de novo review, the Court grants the United States's Motion and revokes the July 14 release order.

**I.      Background**

On May 7, 2023, law enforcement officers "responded to a reported shooting near Maynardville Pike" in Knox County, Tennessee [*See* Amended Pretrial Services Report at 3].[1] "A vehicle" Defendant Lashawn Marquize Freeman was driving "was witnessed near the incident and began to accelerate for no apparent reason." *Id.* Officers gave chase, attempting to "match the vehicle['s] pace," "reaching speeds of 111 MPH." *Id.* Officers observed the vehicle "fishtailing on the interstate due to the high rate of speed and running over a median while exiting the off

---

[1] Information related to Defendant Lashawn Marquize Freeman's background and criminal history is contained in the Amended Pretrial Services Report compiled by the United States Probation Office. The Amended Pretrial Services Report was made available to the Parties before Defendant's detention hearing. The Amended Pretrial Services Report is on file with the Court. The United States Probation Office recommended that Defendant remain detained pending trial.

ramp," causing "the front tires to deflate and damage[] the vehicles rims." *Id*. "The vehicle attempted to travel the wrong direction" on the road until stopping. *Id*. Defendant and two other "occupants exited the vehicle and ran from the scene on foot." *Id*. Officers observed one former occupant of the vehicle "throw[] a backpack while fleeing." *Id*. Law enforcement recovered the backpack and found "individual plastic baggies of marijuana, $785," and a firearm inside. *Id*. at 3-4. Officers captured Defendant, and he had more than $2,500 on his person. *Id*. at 4. Defendant was charged with evading arrest, and on August 14, 2023, he was ultimately sentenced to one year (1-year), suspended to probation. *Id*.

On November 15, 2023, a mere three (3) months later and while Defendant was still on probation, law enforcement executed a search warrant at a house located at "2825 Cecil Ave." in Knoxville, Tennessee. *Id*. Defendant rented the home [Doc. 29 at 4]. And he does not contest that he was living at the residence at the time [*See* Doc. 42].

Mateo James, a codefendant in this action, who had "active arrest warrants," [Doc. 39 at 3] was present that day, and law enforcement took him into custody, [Amended Pretrial Services Report at 4]. James said that there was another man in the home [Doc. 39 at 3]. Defendant, however, was not located when the officers performed a protective sweep [*Id*.]. But some of his personal effects were [*See* Amended Pretrial Services Report at 5]. In the front bedroom of the home, law enforcement recovered "two Tennessee driver's licenses belonging to" Defendant and his "EBT card" along with "a loaded AR-style pistol; a loaded AK-47; bulk ammo of various calibers; assorted firearm magazines; two suspected fentanyl pills; 71.6 grams of suspected powder fentanyl (white); [and] $1,723" [*Id*. at 5].

In the living room, officers found "a loaded Glock 27 handgun modified for automatic fire; a loaded AR-style pistol modified for automatic fire; a Loaded Glock 23 handgun; a loaded

2

Glock19 handgun; 58.6 grams of suspected methamphetamine; 630.8 grams of suspected fentanyl pills; 40.7 grams of suspected powder fentanyl (tan); 17.5 grams of suspected powder fentanyl (blue); 38.6 grams of suspected powder fentanyl (white); five bags containing approximately 3.5 grams of suspected marijuana each; five suspected MDMA pills packed in a tied baggie; bulk ammo of various calibers; assorted firearm magazines; four cell phones; and three digital scales." *Id.*

In the kitchen, law enforcement found "approximately one gram of suspected methamphetamine packed for resale and a bag containing fentanyl processing equipment (including two blenders, a measuring cup, a digital scale, a mesh strainer, protective gloves, a mallet, and a credit card belonging to the defendant)." *Id.* "The processing equipment was covered in a residual dust consistent with fentanyl." *Id.* All told, "the approximate weight of the suspected fentanyl" was "857.8 grams." *Id.* On November 15, 2023, Defendant was charged with various state crimes [Doc. 39 at 5].

On August 8, 2024, a federal grand jury returned a four-count (4-count) indictment charging Defendant and James with federal crimes based on the evidence recovered on November 15, 2023 [*See* Doc. 3, *sealed]. The Indictment charges Defendant with (1) possession with intent to distribute four-hundred (400) grams or more of a mixture and substance containing a detectable amount of fentanyl, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(A); (2) possession with intent to distribute fifty (50) grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(A); and (3) possession of firearms equipped with machinegun conversion devices in furtherance of drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i), 924(c)(1)(B)(ii) [*See id.*, sealed].

3

On December 24, 2024, more than a year after the November 2023 search of Defendant's residence and more than four (4) months after his federal indictment, law enforcement observed Defendant walking down the street near "Five Points residences" [Amended Pretrial Services Report at 5]. Officers asked Defendant if he was willing to talk to them, and Defendant agreed. *Id.* Officers asked Defendant "if he lived nearby and for identification." *Id.* Defendant stated that "he was visiting a female friend, did not know the address she lived in, and did not have any identification on him." *Id.* Defendant proceeded to give law enforcement an inaccurate name and fake social security number. *Id.* Only after law enforcement took Defendant into custody did he reveal his true identity. *Id.* And after a criminal history check "revealed several outstanding warrants," officers transported Defendant to Knox County Jail. *Id.* A $100,000 bond was set. *Id.*

On January 2, 2025, the United States filed a "Petition for Writ of Habeas Corpus Ad Prosequendum," requesting that Knox County law enforcement deliver Defendant to federal custody [Doc. 5]. Subsequently, this Court granted the Petition [Doc. 7].

On July 14, a federal detention hearing was held [*See* Doc. 35]. At the hearing, the United States asserted that Defendant should remain detained pending trial. Defendant argued that he should be released on conditions [*See* Doc. 36]. Defendant proffered a letter from "Jennifer Graves," a manager at "at Sonic Drive-In on Millertown Pike" which states that Defendant can work at Sonic while one release. Defendant further proffered Mary Tharp, Defendant's grandmother, as a third-party custodian [*See id.*]. Ms. Tharp lives at 2816 Cecil Avenue in Knoxville [*Id.*]. Ms. Tharp is a legal assistant at a law firm in Knoxville [*Id.*]. Ms. Tharp also takes care of a family friend with multiple sclerosis who cannot feed or bathe himself at her home [*Id.*]. Currently, Ms. Tharp's husband is unable to work due to concussion-related issues following a work accident [*Id.*]. Defendant represents that Mr. Tharp has an appointment "with a neurologist

4

on August 19th and *may* be cleared to return to work" [Doc. 42 at 12 (emphasis added)]. Two (2) others live in the home –one of Ms. Tharp's granddaughters, age 18, who works full-time and a 16-year-old granddaughter who works part-time until school resumes in August [*Id.*].

Defendant was ordered released on conditions at the conclusion of the detention hearing [Docs. 35, 36]. The release order provided various conditions, including that Ms. Tharp would serve as a third-party custodian, Defendant would maintain employment, and Defendant would generally be subject to home detention, with exceptions for employment; education; religious services; medical substance abuse or mental health treatment; attorney visits; court appearances; and court-order obligations or other activities approved in advance [Doc. 35]. Defendant was also subject to electronic monitoring to ensure that he complied with home detention [Doc. 35].

**II.    Analysis**

If a magistrate judge orders a defendant released pending trial, the United States may file "a motion for revocation of the order or amendment of the conditions of release." 18 U.S.C. § 3145(a). The district court generally reviews the magistrate judge's order de novo and may act without holding a further hearing. *See United States v. Marcrum*, 953 F. Supp. 2d 877, 880 (W.D. Tenn. 2013), *aff'd*, No. 13-6008 (6th Cir. Nov. 1, 2013). A second hearing is not necessary where, as here, the material information is already in the record from the initial detention hearing. *See also* 18 U.S.C. § 3142(f); *United States v. Williams*, No. 20-CR-142, 2020 WL 6866404, at *2-5 (S.D. Ohio Nov. 23, 2020) (reviewing magistrate judge's detention order de novo without a separate hearing).

18 U.S.C. § 3142 governs the release or detention of a defendant pending trial. Where, as here, the United States moves for detention of a defendant charged with "an offense for which a

5

maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act," 18 U.S.C. § 3142(f)(1)(C), the Court must determine whether any "condition or combination of conditions" will "reasonably assure the appearance of [Defendant] as required and the safety of any other person and the community," *id.* at § 3142(e)(1), (f). The factors that the Court considers in determining whether to detain a defendant under Section 3142(e) are:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.

18 U.S.C. § 3142(g).

Under Section 3142(e)(2), the Court presumes (subject to rebuttal) that "no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of the community" if "there is probable cause to believe that the [defendant] committed" a qualifying offense under the Controlled Substances Act. *See* 18 U.S.C. § 3142(e)(3)(A). A grand jury's indictment "by itself, establishes probable cause to believe that a defendant committed the charge." *See United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010) (citing *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985)). The Parties do not dispute that the presumption applies here [*See* Doc. 36].

To rebut the presumption, Defendant must "introduce at least some evidence" that he is not a flight risk and does not pose a danger to the community. *See Stone*, 608 F.3d at 945, 947 (noting

6

that the defendant's burden of production is "relatively light"). Defendant proffered testimony that Ms. Tharp—Defendant's grandmother—was willing to serve as a third-party custodian [Doc. 36]. Further, Defendant proffered evidence that he had potential employment were he released [*Id.*]. Defendant thereby minimally satisfied his "relatively light" burden of production and rebutted the presumption. *See Stone*, 608 F.3d at 945, 947. Even so, "the presumption favoring detention does not disappear entirely, but remains a factor to be considered." *Id.* (quotation omitted).

So the Court turns to the task at hand: determining whether any "condition or combination of conditions" will "reasonably assure the appearance of [Defendant] as required and the safety of any other person and the community." *See* 18 U.S.C. § 3142(e)(1). Ultimately, the United States must "prove dangerousness to any other person or the community by clear and convincing evidence." *United States v. Hinton*, 113 F. App'x 76, 77 (6th Cir. 2004); *see* 18 U.S.C. § 3142(f) (addressing the United States's burden as to "the safety of any other person and the community"). Here, even if the Court presumes that conditions exist that would ensure that Defendant does not flee, the United States has shown that there is no condition or combination of conditions that will reasonably assure the safety of any other person and the community.

Each of the Section 3142(g) factors weighs in favor of detaining Defendant. **First**, the nature and circumstances of the offense charged favor detention. The Indictment alleges that Defendant and codefendant James possessed with intent to distribute large quantities of fentanyl and methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(A) [*See* Doc. 3, *sealed*]. The Grand Jury charged Defendant with a serious offense involving a controlled substance that presents a great threat to the safety of the community. *See* 18 U.S.C. § 3142(g)(1).

7

Fentanyl alone, even in small amounts, can be lethal, and there is probable cause to believe that Defendant possessed with intent to distribute a significant amount of it [*See* Doc. 3, *sealed; *see also* Amended Pretrial Services Report at 4-5]. *See Stone*, 608 F.3d at 945. Additionally, the Indictment charges Defendant with possessing various firearms in furtherance of his drug crimes, further showing the potential danger Defendant poses. Drug trafficking is dangerous, and it is made more dangerous by the presence of firearms, especially the types located at Defendant's residence.

*Second*, Defendant's alleged conduct in this case underscores the danger that he represents. *See* 18 U.S.C. § 3142(g)(2). This factor "only goes to the likelihood that the defendant will pose a danger to the community and is not a pretrial determination of guilt." *United States v. Foster*, No. 20-5548, 2020 WL 6791572, at *2 (6th Cir. July 20, 2020). At the detention hearing, the United States proffered evidence describing Defendant's criminal history and the circumstances of the present case, as reflected in the Amended Pretrial Services Report, and argued that this history warranted detention pending trial [Doc. 36]. Possession with the intent to distribute narcotics and possession of firearms, some converted to machinegun capability, are inherently dangerous and demonstrate the danger to the community that could result from Defendant's pretrial release. *See United States v. Taylor*, 449 F. Supp. 3d 668, 673 (E.D. Ky. 2020).

*Third*, Defendant's history and characteristics likewise weigh in favor of detention. Defendant is twenty-two (22) years old and is a "lifelong resident of Knoxville," but his past conduct is concerning [*See* Doc. 42 at 4; *see also* Amended Pretrial Services Report at 1]. *See* 18 U.S.C. 3142(g)(3)(A). For example, he has demonstrated his willingness to place members of the community in danger [*See* Amended Pretrial Services Report at 1-5]. Defendant has led law enforcement on a 110+ mile per hour chase—including driving over a median and on the wrong

8

side of the road—that endangered not only himself, other car occupants, and law enforcement, but the broader community [*Id.* at 6, 7, 11]. That history and conduct demonstrates his dangerousness. *See* 18 U.S.C. § 3142(g)(3)(A), (4). And while he was on probation for that offense, he allegedly committed the instant offense, showing that he is unable or unwilling to comply with terms of probation. On de novo review, Defendant's history and characteristics favor detention. *See* 18 U.S.C. § 3142(g)(3)(A).

*Last*, Defendant's release would pose a danger to the community. *See* 18 U.S.C. § 3142(g)(4). As discussed above, Defendant's history before this case and his alleged conduct in this case demonstrate the risk of Defendant engaging in further illegal and dangerous activity if released. *See id.* And that risk is buttressed by his willingness to conceal his identity by giving false information to law enforcement. Defendant argues that giving a false name to law enforcement does not indicate the danger he poses to the community because that was his legal name at birth before his birth certificate changed in high school [*See* Doc. 42 at 11]. But Defendant gave law enforcement a fake social security number too [*See* Amended Pretrial Services Report at 5]. Put plainly, Defendant's past conduct shows that he presents a danger to the community. As such, this factor, therefore, supports detention.

And the conditions Defendant proposed will not reasonably assure the safety of any other person and the community. Defendant has a willing third-party custodian and promised employment, but these are not adequate safeguards in these circumstances to ensure the safety of the community. *See* 18 U.S.C. § 3142(g)(3)(A). Mr. Tharp works at a law firm in Knoxville [*See* Doc. 42]. And others present in the home have multiple other obligations or employment to which they attend [*See id.* at 12]. Nor does home detention with electronic monitoring suit the need for community safety. Defendant would be permitted to leave Ms. Tharp's home for work and various

9

other exceptions. Electronic monitoring has inherent limitations in fidelity and its ability to track Defendant once he leaves Ms. Tharp's home. In the past, Defendant has shown that he would lie to law enforcement and take other actions to attempt to avoid detention and arrest. This Court cannot be confident that he would faithfully report his whereabouts to his probation officers. And the electronic monitoring system does not have enough fidelity to ensure that Defendant is not returning to previous criminal conduct. Defendant's inherently dangerous conduct in this case coupled with his history and characteristics demonstrate the danger that he poses, and the proposed conditions do not adequately ameliorate that risk. *See* 18 U.S.C. § 3142(g). Nor could this Court identify any other set of conditions that would reasonably assure the safety of any other person and the community.

### III. Conclusion

Considering the relevant factors de novo, no conditions of release would "reasonably assure" "the safety of any other person and the community." *See* 18 U.S.C. § 3142(e)(1). Accordingly, the Court **GRANTS** the United States's "Emergency Motion Under 18 U.S.C. § 3145 for Revocation" [Doc. 39] and **REVOKES** the July 14 release order. Defendant **SHALL** remain detained pending trial. **The previous stay is LIFTED.**

SO ORDERED.

KATHERINE A. CRYTZER
United States District Judge